UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAYVION POSEY,<br><br>      Plaintiff,<br> vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT,<br><br>      Defendant. | Case No.: 2:23-cv-01936-GMN-MDC<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

  Pending before the Court is Plaintiff Tayvion Posey's Motion for Summary Judgment, (ECF No. 47). Defendant Las Vegas Metropolitan Police Department ("LVMPD") filed a Response, (ECF No. 51). Plaintiff did not reply. Also pending before the Court is Defendant's Motion for Summary Judgment, (ECF No. 52). Plaintiff filed a Response, (ECF No. 54), to which Defendant replied, (ECF No. 59).

  For the reasons discussed below, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

  This case arises from the arrest of Plaintiff following an altercation at a business complex. According to the police reports, on September 2, 2021, Joseph Meads, an employee at the business complex, reported an assault and battery with a firearm that occurred at the complex. (Decl. Arrest Report at 2, Ex. A. to Def.'s Mot. Summ. J., ECF No. 52-1). During his call to report the assault, Meads stated that a business owner of one of the suites had discharged a firearm at an unknown Black adult male who was banging on the business window with a firearm. (*Id.*). He described the person banging on the door as a Black adult male who appeared to be in his 30s, was approximately 5'11" tall, had black dreads, was wearing a white

shirt and gray shorts, and had fled the scene in a burgundy 4-door Hyundai sedan. (*Id.*). LVMPD Officer Piekarski was dispatched to the reported assault. (*Id.*).

The police report further explains additional officers arrived at the scene and contacted the business owner that Meads had mentioned in his call, who identified himself as Clifton Baylor. (*Id.*). Baylor advised officers that for the preceding two weeks the same unknown Black adult male with shoulder length black dreads had been coming to his suite and the neighbor's suite, asking for someone named "Rallo." (*Id.*). During those two weeks, Baylor had seen the suspect three times, and each time the suspect banged on his suite window while holding a black firearm, yelling profanities, and stating, "I'm about that action." (*Id.*). Baylor advised the officers he was unfamiliar with the suspect and that each time, he tried to tell the suspect that he did not know "Rallo," and that the suspect had the wrong address. (*Id.*).

Baylor then told police that the suspect came to his suite again on September 2 and started kicking and knocking on his door in an aggressive manner. (*Id.*); (Baylor Statement at 2, Ex. B to Def.'s Mot. Summ. J., ECF No. 52-2). Baylor could see through the blinds and observed the suspect holding a black handgun while he attempted to gain access to the suite and yelled "Open this fucking door." (Decl. Arrest Report at 2, Ex. A. to Def.'s Mot. Summ. J.); (Baylor Statement at 2, Ex. B to Def.'s Mot. Summ. J.). Due to his prior interactions with the suspect, and the actions the suspect was taking during the September 2 incident, Baylor claimed he feared that the suspect was "coming for him" and used a 9mm handgun to fire two shots through the door to his suite. (Baylor Statement at 2, Ex. B to Def.'s Mot. Summ. J.). The handgun jammed, preventing him from firing any more shots. (*Id.*). The suspect then fled the scene on foot. (*Id.*).

According to the police reports, Officer Pico interviewed witness Tyrone Edmond, who saw the same suspect with shoulder length dreads drive up in a red sedan at the front of the business complex and begin yelling profanities and banging on the suite window and door.

1  (Decl. Arrest Report at 2, Ex. A. to Def.'s Mot. Summ. J.).  Edmond heard a single gunshot
2  come from inside the suite and saw the suspect run to his vehicle. (*Id.*).

3        LVMPD Detectives Lawrence and Yarphel subsequently arrived at the scene and took
4  over the investigation. (*Id.*).  During their interview with Baylor, he advised the detectives that
5  he believed the suspect was trying to find the person associated with Suite 121. (*Id.*).  In
6  response, the detectives contacted the person associated with Suite 121, Anthony Davis. (*Id.*).
7  Davis told the officers he was aware that the suspect, who he believed to be Tayvion Posey
8  (Plaintiff), had an issue with one of the individuals operating out of his unit, who used to be
9  friends with Plaintiff. (*Id.*).

10       The police report states that the detectives then spoke with Leslie Long, the father of the
11 individual who Davis identified as Plaintiff's former friend. (*Id.*).  Long advised the detectives
12 that he had known Plaintiff for several years and that he was friends with his son. (*Id.*).  Long
13 forwarded to the police three videos that were taken from Plaintiff's Instagram account. (*Id.* at
14 3).  The arrest report states that the videos showed Plaintiff entering the business complex
15 where the shooting occurred, yelling and screaming and banging on one of the suites. (*Id.*).  In
16 one video, the arrest report says Baylor could be heard trying to tell Plaintiff that he did not
17 know him, and that he was at the wrong place. (*Id.*).

18       The detectives conducted a records check on the name "Tayvion Posey," which pulled
19 up Plaintiff's full name "Tayvion Christopher Posey." (*Id.*).  Moreover, the cell number
20 provided by Long matched Posey's records. (*Id.*).  The detectives then impounded the
21 Instagram videos and issued a preservation request to Instagram's parent company pending a
22 search warrant for Plaintiff's account, "Tay2rare." (*Id.*).

23       Two days after the incident, Detective Steinbach presented Baylor with a standard 6-
24 photo lineup, containing five other individuals of similar likeness to Plaintiff. (*Id.*).  Plaintiff's
25 photo was placed in the fourth position. (*Id.*).  Baylor picked Plaintiff out of the lineup,

indicating that he was "positive" about the identification. (*Id.*); (Baylor's Voluntary Statement re Photo-Lineup at 2, Ex. D. to Def.'s Mot. Summ. J., ECF No. 52-4).

Later that day, LVMPD officers traveled to Plaintiff's address. (Decl. Arrest Report at 3, Ex. A. to Def.'s Mot. Summ. J.). Officers observed Plaintiff exit his apartment and they apprehended Plaintiff without incident. (*Id.*). Plaintiff had a black satchel bag when he was arrested, in which the officers found a loaded tan and black handgun with an extended magazine. (*Id.*). Plaintiff did not possess a concealed carry permit. (*Id.*).

The arresting officers conducted another records check which revealed that Plaintiff was a two time convicted felon. (*Id.* at 4). Both convictions prohibited Plaintiff from being in possession of a firearm. (*Id.*). Plaintiff was charged with (1) carrying of a concealed weapon without a permit – NRS 205.350.1D; (2) ownership/possession of a gun by a prohibited person – NRS 202.360.1; and (3) assault with a deadly weapon – NRS 200.471.2B. (*Id.*). The charges were eventually dismissed in state court. (Court Mins., Ex. F to Pl.'s Resp., ECF No. 54).

Plaintiff brings the present lawsuit against Defendant alleging claims for "Public Humiliation," "Defamation of Character," and "Pain and Suffering caused by Wrongful Arrest." (First Am. Compl. ("FAC") at 4, ECF No. 28). Plaintiff and Defendant now move for summary judgment on Plaintiff's claims.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a

1  genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'
2  differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.
3  1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary
4  judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving
5  party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*
6  *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to
7  isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477
8  U.S. 317, 323–24 (1986).

9  In determining summary judgment, a court applies a burden-shifting analysis. "When
10 the party moving for summary judgment would bear the burden of proof at trial, it must come
11 forward with evidence which would entitle it to a directed verdict if the evidence went
12 uncontroverted at trial. In such a case, the moving party has the initial burden of establishing
13 the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*
14 *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and
15 quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving
16 the claim or defense, the moving party can meet its burden in two ways: (1) by presenting
17 evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating
18 that the nonmoving party failed to make a showing sufficient to establish an element essential
19 to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477
20 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be
21 denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress*
22 *& Co.*, 398 U.S. 144, 158–60 (1970).

23 If the moving party satisfies its initial burden, the burden then shifts to the opposing
24 party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*
25 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. **DISCUSSION**

Plaintiff pleads three causes of action against Defendant: (1) Public Humiliation, (2) Defamation, and (3) Wrongful Arrest. (*See generally* FAC). Plaintiff moves for summary judgment on his claims. (*See generally* Pl.'s Mot. Summ. J., ECF No. 47). Defendant also moves for summary judgment. (*See generally* Def.'s Mot. Summ. J., ECF No. 52). The Court

begins by addressing the parties' arguments as to the wrongful arrest in violation of 42 U.S.C. § 1983.

### A. Wrongful Arrest

Plaintiff's wrongful arrest claim against Defendant is brought as a violation of the Fourth Amendment in violation of 42 U.S.C. § 1983. Section 1983 actions involve the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To bring a successful § 1983 claim, a plaintiff must allege (1) a violation of a constitutional right and (2) must show that the alleged violation was committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Moreover, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Section 1983 claims against police departments are generally brought as a *Monell* claim because there is no *respondeat superior* liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993). Although Plaintiff does not bring a *Monell* claim against Defendant, the Court *sua sponte* analyzes whether *Monell* liability exists because Plaintiff only sues LVMPD and does not allege claims against any individual officer. Under *Monell*, municipalities can be sued directly under § 1983 for violations of constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To impose *Monell* liability on a municipality under § 1983, a plaintiff must demonstrate that (1) he was deprived of a constitutional right; "(2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). At summary judgment, the Court must determine whether Defendant presents evidence to negate an

essential element of *Monell* liability or demonstrates that Plaintiff failed to make a showing sufficient to establish an element essential to his case on which he will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.

The Court begins by discussing the first element of *Monell* liability: whether Plaintiff was deprived of a constitutional right. Here, Plaintiff asserts that Defendant violated his Fourth Amendment right to be free from unreasonable searches and seizures for many reasons, including that Defendant conducted a warrantless arrest. While Defendant argues that it is entitled to summary judgment on this claim because it had probable cause to arrest Plaintiff, Plaintiff contends that he is entitled to summary judgment because Defendant in fact lacked probable cause to arrest him.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. *See Payton v. New York*, 445 U.S. 573, 585 (1980). "The 'reasonableness' and hence constitutionality of a *warrantless* arrest is determined by the existence of probable cause." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) (emphasis added). "Law enforcement officers may make warrantless arrests where there are 'reasonable grounds to believe' that a crime has been committed and the person arrested has committed the offense." *Tachiquin v. Stowell*, 789 F.Supp. 1512, 1518 (E.D. Cal. 1992) (quoting *Henry v. United States*, 361 U.S. 98, 170 (1959)). "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" *Barry*, 902 F.2d at 773 (quoting *DeFillippo*, 443 U.S. at 37 (1979)).

Plaintiff argues that Defendant violated his constitutional rights because "no search warrant or arrest warrant was placed or wanted for [Plaintiff]." (Pl's. Resp. at 5). The record is

devoid of any arrest warrant so the Court must consider whether the warrantless arrest was reasonable. Defendant relies on a non-exhaustive list of seven facts to demonstrate that it had probable cause to arrest Plaintiff which would make the warrantless arrest reasonable. First, Defendant points to the fact that witnesses Meads, Baylor, and Edmonds provided identical descriptions of the suspect, a black adult male, approximately 5'11" tall, with black dreads. (Def.'s Mot. Summ. J. 11:19–21); (Decl. Arrest Report at 2, Ex. A. to Def.'s Mot. Summ. J., ECF No. 52-1). Second, witness Davis reported that he was familiar with whom he believed to be the suspect, who he identified as Tayvion Posey, and believed he was taking issue with another person operating out of the business complex. (Def.'s Mot. Summ. J. 11:22–24); (Decl. Arrest Report at 2, Ex. A. to Def.'s Mot. Summ. J.). Third, witness Long reported that he was also familiar with Plaintiff, who he said had recently had a falling out with his son, and reported he believed Plaintiff may have been suffering from some form of drug related "mental issue." (Def.'s Mot. Summ. J. 11:25–27); (Decl. Arrest Report at 3, Ex. A. to Def.'s Mot. Summ. J.). Fourth, witness Long provided Defendant with three videos posted to Plaintiff's Instagram account showing his presence at the business complex, wherein Baylor could be heard telling Plaintiff he had the wrong address.[1] (Def.'s Mot. Summ. J. 12:1–3); (Decl. Arrest Report at 3, Ex. A. to Def.'s Mot. Summ. J.). Fifth, Detectives provided Baylor with a standard six photo line-up including Plaintiff's picture, which Baylor immediately chose and indicated he was 100% sure that Plaintiff was the culprit. (Def.'s Mot. Summ. J. 12:4–6); (Decl. Arrest Report at 3, Ex. A. to Def.'s Mot. Summ. J.). Sixth, when Plaintiff was apprehended, he had in his possession, a black handgun with an extended magazine that was fully loaded and had its serial number scratched off. (Def.'s Mot. Summ. J. 12:7–8); (Decl. Arrest Report at 3, Ex. A. to Def.'s Mot. Summ. J.); (Decl. Arrest Report at 3, Ex. A. to Def.'s Mot. Summ. J.). Lastly,

---

[1] The three videos were not submitted as exhibits, nor do they appear in the record. Plaintiff does not mention the videos in his Response, however, nor does he refute that they existed.

records revealed that Plaintiff was a two-time prior felon, while in possession of the handgun. (Def.'s Mot. Summ. J. 12:9–10); (Decl. Arrest Report at 3, Ex. A. to Def.'s Mot. Summ. J.).

The Court agrees that the record demonstrates that Defendant had probable cause to arrest Plaintiff for each of the charges he was arrested for. Defendant had corroborating descriptions of the suspect, a witness identified Plaintiff, by name, as the likely suspect, another witness corroborated the theory that Plaintiff had history with another complex tenant, a witness provided police with video evidence of Plaintiff at the scene during the altercation between himself and Baylor, an eyewitness selected Plaintiff from a standard photo lineup, and while arresting Plaintiff for the September 2 incident, officers discovered he was committing two other crimes: carrying a concealed weapon without a permit and ownership/possession of a gun by a prohibited person. Probable cause for a warrantless arrest requires that officers had reasonable grounds to believe that a crime has been committed and the person arrested has committed the offense. *Henry*, 361 U.S. at 170. The record is sufficient to meet this standard. Thus, Defendant meets its burden of negating an essential element of Plaintiff's § 1983 claim, because without a constitutional violation—in this case a warrantless arrest without probable cause—there is no *Monell* liability nor a successful § 1983 claim. The burden now shifts to Plaintiff to establish that a genuine issue of material fact exists.

To establish a genuine dispute of material fact, Plaintiff must demonstrate that there is a genuine dispute about whether Defendant had probable cause to support Plaintiff's warrantless arrest. Plaintiff argues that summary judgment should be granted in his favor because "he filed for relief first and the facts back up his claim." (Pl.'s Resp. at 5, ECF No. 54). To begin, relief is not granted to a moving party simply because they filed a motion first. As for Plaintiff's other arguments, he contends that Defendant lacked probable cause to arrest him because the police did not identify him before arresting him. (Pl.'s Resp at 6). Plaintiff is correct that the record is devoid of any facts establishing that Defendant asked for Plaintiff's name before

placing him under arrest. But Plaintiff's briefing is similarly devoid of any case law, and the Court cannot find any, that states that an officer must ask for the person's name prior to arresting them. Here, officers had Plaintiff's name, had previously run a records check on him, had his photograph, found his address, and arrested him after they saw him walk out of the address associated with the name of the person they sought to arrest. (*See generally* Decl. Arrest Report, Ex. A. to Def.'s Mot. Summ. J.). The Court disagrees with Plaintiff that Defendant lacked probable cause based on this argument.

Plaintiff also argues that Defendant did not have probable cause to arrest him for each of the charged offenses. (Pl.'s Resp. at 7). It is well-established that "[i]f the facts support probable cause. . . for one offense," an arrest may be lawful "even if the officer invoked, as the basis for the arrest, a different offense" which lacks probable cause. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016); *see also Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) ("[P]robable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest."). Thus, because Defendant had probable cause to arrest Plaintiff for assault with a deadly weapon, the arrest did not violate Plaintiff's constitutional rights even though Plaintiff was also charged with two additional offenses: (1) carrying of a concealed weapon without a permit – NRS 205.350.1D; and (2) ownership/possession of a gun by a prohibited person – NRS 202.360.1.

Plaintiff next argues that because his arrest charges were dropped after his arrest, the investigating and arresting officers did not have probable cause to arrest him. (*Id.*). But an officer is not liable for damages based on a claim of false arrest if there was probable cause to make the arrest. *Pierson v. Ray*, 386 U.S. 547, 555 (1967). This is true even if the charges are later dropped or the person arrested is subsequently acquitted. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually

1 committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) ("[T[he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause."). Thus, Plaintiff's charges being dismissed does not negate that Defendant had probable cause to arrest Plaintiff in the first place.

Plaintiff next argues that Defendant did not have probable cause to arrest him because he did not match the witness descriptions of the suspect. (Pl.'s Resp. at 5). The witnesses described the suspect as a Black adult male, approximately 5'11" tall, with black dreads, while Plaintiff alleges in his FAC that he is 5'9'' and had short curly hair during the relevant time period. (Decl. Arrest Report at 2, Ex. A. to Def.'s Mot. Summ. J.); (FAC at 2). Small inconsistencies in a suspect's description and the person arrested, however, is not by itself evidence that Defendant lacked probable cause. *U.S. v. Edwards*, 761 F.3d 977 (9th Cir. 2014) (detaining an individual who "fairly" matched the description provided found to be reasonable). The Court finds that the description of the suspect and Plaintiff was fairly consistent because the height description differs by only two inches, and hair is a characteristic that can be easily changed. Moreover, Defendant based its probable cause from more facts than just the matching descriptions. A witness identified the suspect by name and another witness positively identified Plaintiff during the photo lineup as being the suspect. Thus, the Court is unconvinced by this argument.

Plaintiff also argues that Defendant did not have probable cause to arrest him because its alleged probable cause was based on hearsay. (Pl's. Resp. at 5). Law enforcement officers are permitted to rely on hearsay when developing probable cause. *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) ("Police may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause."). Thus, while some of the evidence developed during the investigation into Plaintiff's actions on September 2, 2021, may be

hearsay, the investigating and arresting officers were entitled to rely upon that evidence when determining whether the totality of the circumstances established probable cause.

In sum, Plaintiff fails to present evidence and arguments that establish a genuine dispute of material fact exists as to whether Defendant had probable cause to arrest him without a warrant. Because Defendant had probable cause to arrest Plaintiff, no constitutional violation occurred. *See Barry*, 902 F.2d at 772. The absence of a constitutional violation wholly negates Plaintiff's claim for false arrest and a *Monell* claim cannot proceed. *See Gordon*, 6 F.4th at 973. Thus, Defendant's Motion for Summary Judgment is GRANTED as to the unlawful arrest claim. The Court has reviewed Plaintiff's Motion for Summary Judgment and finds that he fails to come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial for the reasons discussed above. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED as to this claim.

**B. Defamation**

Plaintiff and Defendant each move for summary judgment on Plaintiff's defamation claim. To succeed on a claim for defamation in Nevada, a plaintiff must demonstrate: (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005). Because Nevada adopts defamation by pantomime as an actionable intentional tort, the first element of a defamation claim can be satisfied by conduct as well as words or a combination of both. *K-Mart Corp. v. Washington*, 866 P.2d 274, 276, 282 (Nev. 1993); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (explaining that the imputation of wrongdoing by pantomime, *i.e.* walking a person in public in handcuffs, if communicated to a third party, is unquestionably slander per se). However, a defamation claim based on an arrest fails if the arrest was supported by probable cause. *Tsao*, 698 F.3d at 1148.

As mentioned throughout this Order, Defendant had probable cause to arrest Plaintiff which establishes that Plaintiff's defamation claim fails as a matter of law. Thus, Plaintiff's Motion for Summary Judgment is DENIED as to this claim. Defendant's Motion for Summary Judgment for the defamation claim is GRANTED.

### C. IIED

Plaintiff's FAC pleads a cause of action for humiliation that the Court construes as an intentional infliction of emotional distress ("IIED") claim. (*See generally* R&R, ECF No. 43). Plaintiff and Defendant each move for summary judgment on this claim. To prevail on a claim for IIED under Nevada law, a plaintiff must show: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). The Nevada Supreme Court has defined "extreme and outrageous conduct" as that which is "outside all possible bounds of decency" and is regarded as "utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). However, "persons must necessarily be expected and required to be hardened to . . . occasional acts that are definitely inconsiderate and unkind." *Id*. (omission and quotation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

First, Defendant contends that there is no evidence that Plaintiff's arrest is extreme and outrageous. (Def.'s Mot. Summ. J. 14:28–15:2). Second, Defendant argues that Plaintiff fails

to produce evidence illustrating that he suffered and/or was treated for a psychological condition or emotional distress. (*Id.* 15:2–4). Lastly, Defendant contends that there is no evidence to support actual or proximate causation. (*Id.* 15:4–5).

The Nevada Supreme Court has defined "extreme and outrageous conduct" as that which is "outside all possible bounds of decency" and is regarded as "utterly intolerable in a civilized community." *Maduike*, 953 P.2d at 26. A police officer's conduct may rise to the level of extreme and outrageous when he engages in an "extreme abuse" of his position. Restatement (Second) of Torts § 46, cmts. Defendant, as a law enforcement agency, is certainly expected to respond to criminal activity. Thus, the fact that Defendant arrested Plaintiff with probable cause is not enough to constitute "extreme and outrageous conduct" for purposes of an IIED claim. *See, e.g.*, *Cornel v. Hawaii*, 501 F. Supp. 3d 927 (D. Haw. 2020), *aff'd*, 37 F.4th 527 (9th Cir. 2022) ("But given that [plaintiff's] arrest was valid and lawful, nothing can be considered "outrageous" for purposes of IIED."). Furthermore, because Defendant had legal authority to arrest Plaintiff, it cannot be said that it engaged in an "extreme abuse" of its position. Thus, Defendant meets its initial burden of negating an essential element of Plaintiff's IIED claim.

Plaintiff cannot meet his burden of establishing a genuine dispute of material fact because, as discussed above, Plaintiff did not succeed in establishing a genuine dispute of material fact as to whether Defendant had probable cause to arrest him which serves as the basis for his IIED claim. Accordingly, Defendant's Motion for Summary Judgment on the IIED is GRANTED and Plaintiff's Motion for Summary Judgment as to this claim is DENIED.

///
///
///
///

**IV. CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 47), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 52), is **GRANTED**.

The Clerk of Court is kindly directed to enter judgment in favor of Defendant and close the case.

**DATED** this __8__ day of August, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court